# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRANK M. KEANEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO.: 3:03CV1893 (RNC) |
| EASTERN COMPUTER EXCHANGE, ) | |
| INC., a corporation, BRENDAN LYNCH, ) | |
| an individual, and BARRY WILLIAMS, an ) | |
| individual ) | |
| ) | |
| Defendants. ) | |
| ) | DECEMBER 15, 2006 |

### Defendants' Motion in Limine to Allow the Introduction of Evidence of the:
### (1) Plaintiff's Prior Litigation Arising Out of Alleged Oral Agreements; and,
### (2) Level fo Business and Financial Sophistication.

The Defendants respectfully move this Honorable Court in limine to allow the introduction

and use of evidence and testimony concerning the Plaintiff's prior litigation history arising out of

alleged oral agreements and his level of business and financial sophistication. Given the claims

make by Keaney in this case, this evidence is relevant and should be admitted.

In support of this motion, the Defendants submit a memorandum of law.

Respectfully submitted,
The Defendants,
Brendan Lynch and Barry Williams,

By _A.G. Monaghan_
Ann Grunbeck Monaghan
Federal Bar No.: ct16745
Gould, Gillin & Monaghan, P.C.
205 Old Boston Post Road
P.O. Box 524

Old Saybrook, CT 06475
(860) 388-0876 (T)
(860) 388-2642 (F)


Jeffrey S. Beeler (ct 26235)
(Admitted Pro Hac Vice)
Heinlein & Beeler, P.C.
207 Union Street
S. Natick, MA 01760
(508) 655-8700 (T)
(508) 655-2700 (F)

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRANK M. KEANEY,<br><br>    Plaintiff,<br><br>        v.<br><br>EASTERN COMPUTER EXCHANGE,<br>INC., a corporation, BRENDAN LYNCH,<br>an individual, and BARRY WILLIAMS, an<br>individual<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION<br>)    NO.: 3:03CV1893 (RNC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    DECEMBER 15, 2006<br>) |

### Defendants' Memorandum in Support of Their Motion in Limine to Allow the Introduction of Evidence of the: (1) Level of the Plaintiff's Business and Financial Sophistication; and, (2) Plaintiff's Prior Litigation Arising Out of Alleged Oral Agreements.

The Defendants respectfully submit this memorandum in support of their motion in limine to allow the introduction and use of evidence and testimony concerning the Plaintiff's prior litigation history arising out of alleged oral agreements and his level of business and financial sophistication.

### STATEMENT OF RELEVANT FACTS

The Plaintiff, Frank Keaney, is a sophisticated, successful businessman. He has spent many years working in the computer field for companies such as Data General and EMC, prior to being employed by Eastern Computer Exchange, Inc. [ECEI]. As part of his business acumen, Mr. Keaney is well-aware of the need to memorialize all important deals in writing. Against this

1

backdrop, he has brought claims against the Defendants for breach of contract, breach of

fiduciary duty and unjust enrichment which, at bottom, contend that the Defendants breached an

oral partnership agreement they had with him whereby he would be entitled to 1/3 the profits of

ECEI with "no downside," meaning he would receive 1/3 of the profits of ECEI where he: (1)

had no risk or responsibility for any losses; and, (2) had contributed no money to the company

and did not have to execute any personal guarantees.

## A.   Evidence Concerning Mr. Keaney's Level of Sophistication and Business Acumen Should be Allowed.

The Plaintiff is advancing claims for breach of fiduciary duty.  Under Connecticut law, a

"fiduciary or confidential relationship is characterized by a unique degree of trust and confidence

between the parties, one of whom has superior knowledge, skill or expertise and is under a duty

to represent the interests of the other."  Konover Dev. Corp. v. Zeller, 228 Conn. 206, 219, 635

A.2d 798 (1994) (internal quotation marks omitted).  The Connecticut Supreme Court has

"specifically refused to define 'a fiduciary relationship in precise detail and in such a manner as

to exclude new situations,' choosing instead to leave 'the bars down for situations in which there

is a justifiable trust confided on one side and a resulting superiority and influence on the other.'"

Alaimo v. Royer, 188 Conn. 36, 41, 448 A.2d 207 (1982) (citations omitted); Dunham v.

Dunham, 204 Conn. 303, 320, 528 A.2d 1123 (1987).

Keaney bears the burden of proving the existence of a relationship rising to the level of

trust and confidence required to sustain a claim of a common law fiduciary duty.  "Once a

fiduciary relationship is found to exist, the burden of proving fair dealing properly shifts to the

2

fiduciary." Dunham v. Dunham, 204 Conn. 303, 322 (1987). It then falls to the alleged

fiduciary, in this case the Defendants, to prove fair dealing. See Zeller, 228 Conn. at 228.

However, where the parties are involved in a "sophisticated business venture," the fiduciary may

seek to "justify the fairness of a particular transaction" through the application of the "Zeller

standard." In brief, the fiduciary must show:

> (1) that the fiduciary made free and frank disclosure of all the relevant information he
> had, (2) that the consideration was adequate, (3) that the principal had competent and
> independent advice before completing the transaction, and (4) the relative sophistication
> and bargaining power among the parties."

Zeller, 228 Conn at 228.

Keaney is an extremely sophisticated businessman. He is a former Vice President of

North American Sales for Data General Corporation, a computer pioneer, see Ex. A at 28, and

also served for many years as the Senior Vice President of Sales at EMC Corporation, see id. at

28-29, a multi-billion dollar, multi-national supplier of computer storage hardware. During the

course of his business activities he has amassed a massive net worth, see Ex. A at 209, and he

employs sophisticated tax and investment strategies. See id. at 114, 16, 209-27. These include

the use of complex trusts, off shore banking and factoring arrangements. Keaney: (1) has large

stock holdings, see id. at 39; (2) understands stock's relevance to the ownership of a corporation,

see id.; and, (3) understands the importance of putting things in writing. See id. at 42-43.

Indeed, he is a partner and/or member in numerous other corporations, LLCs and trusts, all of

which are in writing and well-documented. This includes those entities involving his family.

As part of their defense to the Plaintiff's claims arising out of an alleged fiduciary

3

relationship, the Defendants must be permitted to present evidence of Keaney's level of sophistication and business acumen. See, e.g. United States v. Quattrone, 441 F.3d 153, 187 (2nd Cir. 2006) ("Where evidence of compensation, wealth or lack thereof can unduly prejudice jury deliberations, that evidence may be admitted where other safeguards are employed such as limiting instructions or restrictions . . ."). Indeed, such evidence will be central to the jury's assessment of Keaney's credibility and whether he imposed a "unique degree of trust and confidence" in Lynch and Williams. He must establish that Lynch and Williams had superior knowledge, skill or expertise on which he reasonably relied. See Zeller, 228 Conn. at 219-28 (relative sophistication of parties is central to such claims). Only through the introduction of such evidence will the jury be able to gauge whether there was "justifiable trust confided on one side and a resulting superiority and influence on the other.'" Alaimo, supra, 188 Conn. at 41. Plainly, Keaney's level of sophistication and business acumen are relevant to these issues. Accordingly, evidence relating to these issues should be permitted.

**B.    Evidence Relating to Mr. Keaney's Prior Litigation Arising out of Alleged Oral Agreements Should be Allowed.**

During discovery of this case, Mr. Keaney was deposed. Some of the questioning related to whether Mr. Keaney had given prior deposition testimony or been a party or witness in any other cases. Keaney admitted to giving a deposition in: (1) a business dispute case against his former employer, Data General, see Ex. A at 8-9; (2) a sexual harassment case in which he was a defendant, see Ex. A at 10-12, 14-15; and, (3) the Madison Remarketing case when he was employed by ECEI, see Ex. A. at 15-16. Mr. Keaney further testified as follows:

4

Q.     Earlier we were talking about prior depositions that you've given, sir. And now you've talked about three matters. Were there any others?

A.     Not that I can specifically recall, no.

Q.     As you sit here today, do you recall any other litigation you have ever been involved in, ever, as a party or as a witness?

A.     I was charged with DUI. Is that the kind of thing you mean?

Ex. A at 44. Following his testimony about a number of DUI [DWI] incidents, Keaney was asked:

Q.     Anything else?

A.     Not that I can recall.

Ex. A at 45.

Strikingly absent from Keaney's sworn recitation about previous litigation and provision of prior sworn testimony were three lawsuits involving claimed oral agreements gone bad. The first arose out of Keaney's purchase of a house. When confronted with this lawsuit, see Ex. A at 51-53, Keaney testified as follows:

Q.     And part of your allegations in this case were that the buyers of the home made a bunch of verbal representations to you; it that right?

A.     That's correct.

See Ex. A at 53. Keaney was then asked, setting aside what he had already testified about:

Q.     Have you ever been a defendant in a case, sir?

A.     Not that I remember.

Ex. A. at 53-54.

5

Keaney, however, had been both a defendant and a plaintiff in two cases involving his former employer, Data General Corporation. Keaney proceeded to testify about these matters as follows:

Q.    Data General sued you, didn't they, sir?

A.    Not that I recall.

Q.    Did you ever sue Data General?

A.    We saber-rattled about a suit, but I don't think I ever filed a suit.

Q.    What was the suit that you saber-rattled about?

A.    I had borrowed money from Date General to purchase some stock under an executive stock plan. And I received a verbal commitment from Jim Campbell that the loan would either be forgiven or played out with no interest over a very long period of time, and they reneged on that commitment.

Q.    That was a verbal commitment; is that right, sir?

A.    That's correct.

Q.    You don't remember the lawsuit being filed against you by Data General and you settling the case?

A.    I recall a settlement.   I didn't recall that they filed a suit.

Q.    Subsequent to that settlement to the case Data General brought against you, you filed a lawsuit against Data General, correct?

       MR. ROUGHSEDGE: Objection.

A.    I don't recall.

       MR. BEELER: Mark this, please.
       (Amended Complaint, marked as Exhibit No. 2)

Q.    Do you recognize that document?

6

A.   Yes, I do.

Q.   Do you recognize that as the complaint that was filed on your behalf in your lawsuit against Data General Corporation?

A.   Yes, I do.

Q.   You were deposed for two days in connection with the Data General litigation, weren't you, sir?

A.   I cannot recall.

Q.   You don't?

A.   Nope.

Ex. A. at 54-55.

Keaney claims an oral partnership agreement. His entire case will turn on his credibility as he details for the jury the alleged single conversation that he claims amounts to an enforceable contract. As part of assessing his credibility, the quality of his memory is unquestionably relevant to this case. His evasive testimony, as set forth above, about significant, factually-similar, previous litigation is germane to this issue. Either Mr. Keaney lied under oath, in which case such questioning and evidence is relevant for impeachment purposes, or his memory is horrendous, a state of affairs about which the jury should be aware. In either case, the evidence is relevant and should be admitted. See Fed. R. Evid. 401-02. Moreover, in determining whether Keaney's alleged reliance on the oral argument he claims was justified and reasonable under the circumstances, the fact that Keaney had previous problems with similar oral agreements in the past should be considered by the jury.

While the Plaintiff has contended that the admission of evidence of Mr. Keaney's DWI

7

difficulties and sexual harassment charges should be precluded under Fed. R. Evid. 403, the

Defendants have no intention of offering such evidence unless it becomes relevant for

impeachment purposes. That being said, the Court should reject the Plaintiff's attempt to link

relevant evidence of Keaney's prior suits involving alleged oral agreements, see, e.g., Jenkins v.

Kos, 78 Conn. App. 840, 842-46 (2003) (discussing admissibility of a prior lawsuit by Plaintiff),

and evidence related his level of sophistication, to his DWI and sexual harassment charges.

Under the facts of this case, and given the claims he advances, there is nothing unfairly

prejudicial about the jury knowing that Keaney is a very sophisticated businessman and either

lied under oath or has a really bad memory. Cf. Fed. R. Evid. 403.

    Accordingly, the Defendants respectfully request that the Court allow the introduction

and use of evidence and testimony concerning the Plaintiff's prior litigation history arising out of

alleged oral agreements and his level of business and financial sophistication.


                          Respectfully submitted,
                          The Defendants,
                          Brendan Lynch and Barry Williams,


                          By _____
                          Ann Grunbeck Monaghan
                          Federal Bar No.: ct16745
                          Gould, Gillin & Monaghan, P.C.
                          205 Old Boston Post Road
                          P.O. Box 524
                          Old Saybrook, CT 06475
                          (860) 388-0876 (T)
                          (860) 388-2642 (F)

Jeffrey S. Beeler (ct 26235)
(Admitted Pro Hac Vice)
Heinlein & Beeler, P.C.
207 Union Street
S. Natick, MA 01760
(508) 655-8700 (T)
(508) 655-2700 (F)

# EXHIBIT A

12/12/2006 19:05 FAX 15086552700          HEINLEIN&BEELER                    ☑002

DEPOSITION OF FRANK M. KEANEY, TAKEN on SEPTEMBER 30, 2004

```
 1              P R O C E E D I N G S
 2        MR. BEELER:  The Usual Stipulations?
 3        MR. ROUGHSEDGE:  Which is pursuant to
 4    the rule.
 5        MR. BEELER:  I'll put them on the
 6    record anyway.
 7        I propose that we reserve all
 8    objections, except as to the form of
 9    the question until the time of trial,
10    and motions to strike until the time of
11    trial as well.
12        Your client is going to read and sign,
13    I presume?
14        MR. ROUGHSEDGE:  Yes.  Thirty days from
15    the date of receiving the transcript, if
16    that's okay, as opposed to the date of today.
17        MR. BEELER:  That's agreeable.
18        MR. ROUGHSEDGE:  If you'll waive the
19    notary?
20        MR. BEELER:  I'll be pleased to waive
21    the notary.  He's going to sign under the
22    pains and penalties of perjury and be done
23    with it?
24        MR. ROUGHSEDGE:  Correct.
```

```
 1    connection with this case.  I have a series of
 2    questions for you today, sir.  Have you been
 3    deposed before?
 4  A  Yes.
 5  Q  Some of what I'm about to tell you will no
 6    doubt sound familiar, but it will hopefully
 7    help things move more smoothly.  It's a
 8    question and answer format, as you know.  If
 9    you would let me finish my question before
10    beginning your answer, I will try to extend
11    you the same courtesy and not interrupt your
12    answer with my next question.  The court
13    reporter's job is to take down what we say
14    and it's difficult for her to do that if you
15    and I speak at the same time.  Okay?
16  A  Yes.
17  Q  If you will keep your response verbal as
18    opposed to a gesture, that would be helpful.
19    Again, she can't take down your gestures.
20    Okay?
21  A  Yes.
22  Q  If you don't understand my question for any
23    reason, please let me know and I will try to
24    put a better one to you.  Okay?
```

```
 1                      FRANK KEANEY,
 2              having been satisfactorily
 3              identified and duly sworn by
 4              the Notary Public, was examined
 5              and testified as follows.
 6              DIRECT EXAMINATION
 7  BY MR. BEELER
 8  Q  Sir, can I get your full name?
 9  A  You want my formal name, Francis?
10  Q  C-I-S?
11  A  C-I-S, yes.  Keaney, K-E-A-N-E-Y.
12  Q  That's your legal name; is that correct, sir?
13  A  Correct.
14  Q  Does the M stand for anything?
15  A  Mark.
16  Q  Your current address, please?
17  A  7515 Pelican Bay Boulevard, Naples, Florida.
18  Q  Your date of birth?
19  A  7/14/36.
20  Q  Your social security number?
21  A  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.
22  Q  Mr. Keaney, as I said to you before we
23    started, my name is Jeffery Beeler, and I
24    represent Eastern Computer Exchange, Inc. in
```

```
 1  A  Yes.
 2  Q  If you answer I'm going to assume that you
 3    understood the question; is that fair?
 4  A  Yes.
 5  Q  Sir, you said you have been deposed before;
 6    is that correct?
 7  A  Yes.
 8  Q  On how many occasions?
 9  A  I'm not certain, three or four.
10  Q  In connection with the first deposition you
11    recall giving, can you tell me what the
12    nature of that case was?
13  A  It was an accounts receivable, accounts
14    payable problem.
15  Q  Was this a personal accounts receivable or
16    something else?
17  A  No.
18  Q  Was it work related?
19  A  Yes.
20  Q  Who were you working for at the time?
21  A  Data General.
22  Q  Were you called as a witness on behalf of
23    Data General in that case?
24  A  Yes.
```

12/12/2006 19:06 FAX 15086552700          HEINLEIN&BEELER                    ☑003

DEPOSITION OF FRANK M. KEANEY, TAKEN on SEPTEMBER 30, 2004

**9**

1 Q  Do you remember the name of the case, sir?
2 A  No, I don't.
3 Q  Who was saying they were owed money in that
    case?
5 A  Data General.
6 Q  Data General was receiving money from whom?
7 A  I don't recall.
8 Q  Were you represented by counsel in that case?
9 A  Yes.
10 Q  Who was Data General's counsel in that case?
11 A  I don't recall.
12 Q  Did you have separate counsel or the same
13     counsel?
14 A  The same counsel.
15 Q  You don't recall who they were?
16 A  No, I don't.
17 Q  Do you know approximately how long ago that
18     deposition was taken?
19 A  Twenty-four years.
20 Q  When was the next deposition you recall
21     giving taken?
22 A  I don't remember.
23 Q  Do you recall the substance of that case?
24     What was the dispute about?

**10**

1 A  No, I don't recall the substance of the next
2     one.
3 Q  Do you recall what the case was about at all,
4     sir?
5 A  There were of number of cases. I don't know
6     which, what the second one was about.
7 Q  Do the best that you can and tell me about
8     the depositions that you gave.
9 A  I don't understand the question.
10 Q  How many depositions did you give, sir?
11 A  Three or four. My guess.
12 Q  I'd like you to tell me about the type of
13     dispute involved in each of those cases.
14 A  I can't. I can tell you about some of them.
15 Q  Tell me about the ones you remember, sir.
16 A  One was on sexual harassment.
17 Q  Okay.
18 A  And one, I was called as a witness in a legal
19     dispute between EMC and a re-seller. The
20     re-seller, I don't recall.
21 Q  Now, the sexual harassment case, were you a
22     witness or a party in that case?
23 A  A party.
24 Q  Were you the plaintiff or the defendant in

**11**

1     that case?
2 A  The defendant.
3 Q  Who was the plaintiff?
4 A  Mary Pat Finley, F-I-N-L-E-Y, I think.
5 Q  Did this case arise out of some alleged
6     activity in the work place?
7 A  Yes.
8 Q  Who were you working for at the time?
9 A  EMC.
10 Q  Do you recall approximately when this case
11     was going forward?
12 A  I would guess '93.
13 Q  Were you Ms. Finley's supervisor at the time?
14 A  Direct supervisor, no.
15 Q  Were you in a supervisory relationship
16     relative to Ms. Finley?
17 A  Yes.
18 Q  Was the case handled at the Massachusetts
19     Commission Against Discrimination, or had it
20     been filed in superior court?
21 A  I don't know.
22 Q  Was the case based here in Massachusetts?
23 A  I don't know.
24 Q  Were you deposed in Massachusetts, sir?

**12**

1 A  Yes.
2 Q  Who deposed you?
3 A  I don't recall.
4 Q  Who was your attorney?
5 A  The EMC attorney.
6 Q  And who was that?
7 A  I don't recall.
8 Q  Do you have a copy of your deposition
9     transcript from that case, sir?
10 A  No, I don't.
11 Q  Sir, have you taken any medication today?
12 A  Yes.
13 Q  What medication have you taken?
14 A  I'll show you the list. [Witness checks for
15     list.] I don't have it with me. I'll try to
16     recall. Matropolo, blood pressure medicine,
17     cholesterol medication, Alofurinal,
18     Furosemide, aspirin, iron, vitamin. I think
19     that's everything.
20 Q  What do you take the Matropolo for, sir?
21 A  I don't know.
22 Q  Do you know if it has any effect on your
23     ability to remember information or to
24     understand my questions?