UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FRANK M. KEANEY,                    :
                                    :
     Plaintiff,                     :
                                    :
V.                                  :   CASE NO. 3:03-CV-1893 (RNC)
                                    :
EASTERN COMPUTER EXCHANGE, INC.,    :
ET AL.,                             :
                                    :
     Defendants.                    :

## RULING AND ORDER

Plaintiff Frank M. Keaney claims that defendants Brendan Lynch and Barry Williams have been unjustly enriched as a result of services he performed for their company, Eastern Computer Exchange, Inc. ("ECEI"). The parties have asked me to decide this unjust enrichment claim based on evidence presented at a jury trial of a closely-related breach of contract claim brought by the plaintiff against the defendants, which resulted in a defense verdict.

At trial, plaintiff alleged that the defendants breached an agreement to divide the profits derived from ECEI in equal shares. Defendants asserted that a different agreement had been reached, whereby plaintiff provided services in exchange for incentive-based compensation and fixed salary. After six days of trial, the jury returned a verdict for the defendants. Defendants' version of the agreement was not submitted to the jury.

Plaintiff seeks to recover a total of $1,972,411.33, which corresponds to one third of ECEI's profits, less the amount already

distributed to him. Defendants argue that plaintiff's unjust enrichment claim is precluded by the jury verdict, by an express agreement between the parties, and the doctrine of laches. On the merits, they argue that only ECEI derived any benefit from plaintiff's services, and that he has been fully compensated by the company. Plaintiff responds that ordering restitution would not necessarily conflict with the jury's verdict, that defendants' version of the agreement was not proved at trial and is directly contradicted by their testimony in a related case, and that he did not have notice of his cause of action until several months before filing the complaint. After careful consideration, I conclude that plaintiff should recover $50,000.

I. FACTS

The credible evidence presented at trial establishes directly, or by reasonable inference, the following facts.

In the fall of 1996, plaintiff was introduced to the defendants by William Raftery. At the time, Raftery worked for EMC Corporation ("EMC"), a supplier for ECEI, and plaintiff had recently retired from EMC, where he had been employed as Senior Vice President of Sales for the United States, Canada and South America. EMC owed ECEI approximately $5 million worth of computer equipment, which EMC had contracted to supply to ECEI but had failed to deliver.

Plaintiff had a long and successful career in sales before

meeting the defendants, including positions with IBM, Data General and EMC. In addition to his full-time employment in sales, he had participated in several real estate deals. Through his employment and real estate investments, he had accumulated a net worth of more than twelve million dollars.

Over the course of several meetings, the parties agreed that plaintiff would work to obtain the equipment EMC promised ECEI, assist with sales efforts, and help recruit and train members of ECEI's sales force. The parties' agreement was not reduced to writing.

Plaintiff did not receive shares in ECEI, contribute any capital to ECEI, or guarantee any loans on ECEI's behalf. In contrast, the defendants, who were the sole shareholders of ECEI, personally guaranteed all loans extended to ECEI, and directly loaned their personal funds to the company.

The parties referred to each other as "principals" of ECEI and gave out business cards with their titles stated as "Principal."

In July 1997, the parties identified an opportunity to expand ECEI's business into Europe and formed a company in England called Eastern Computer Exchange, Ltd. ("ECEL"), with the defendants and the plaintiff holding equal shares.

In October 1999, the parties were each deposed as non-party witnesses in a case brought by Madison Remarketing against EMC. Madison Remarketing was a competitor of ECEI. At his deposition,

defendant Williams testified that plaintiff was a one-third owner of ECEI. Defendant Lynch also testified that plaintiff was a one-third owner of ECEI. In addition, he testified that plaintiff's ownership interest consisted of the right to participate in one-third of the profits of the company.

At all relevant times, ECEI reported its financial statements with September 30 as the fiscal year end ("FYE"). The table below represents the total compensation received by the parties from ECEI from FYE 1997 through FYE 2003:

|  | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | Total |
|---|---|---|---|---|---|---|---|---|
| **Williams** | $286,366 | $1,285,092 | $1,770,779 | $400,000 | $400,000 | $304,000 | $613,236 | $5,059,473 |
| **Lynch** | $285,416 | $1,320,508 | $1,800,402 | $800,000 | $641,801 | $246,000 | $1,234,264 | $6,328,391 |
| **Keaney** | $193,750 | $573,920 | $948,459 | $700,022 | $400,024 | $366,689 | $333,391 | $3,516,255 |

ECEI's profits were distributed in the form of compensation to individuals or were retained within the business for future projects. Retained earnings for FYE 1997 were $1,699,848. Retained earnings for FYE 2003 were $3,261,728.

From the beginning of his association with ECEI until July 1999, plaintiff received his compensation directly from the company. From July 1999 until August 2003, ECEI remitted his compensation to FMK Associates, Inc., a company he established for tax purposes.

Plaintiff terminated his association with ECEI in August 2003 following a dispute with defendant Lynch involving a computer lease agreement with a company known as Go America, Inc. Defendants

4

responded to plaintiff's resignation by stopping payment on a check to him in the amount of $50,000, which represented compensation in connection with a deal involving AIG Insurance Company ("AIG").

II. DISCUSSION

Unjust enrichment is an equitable doctrine that "requires compensation to be given for property or services rendered under a contract . . . [when] no remedy is available by an action on the contract." Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co., 231 Conn. 276, 282 (1994). To recover for unjust enrichment, plaintiff must prove "(1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the [plaintiff] for the benefits, and (3) that the failure of payment was to the [plaintiff's] detriment." Id.

A. Jury Verdict

Defendants argue that since the jury found no enforceable contract between the parties and unjust enrichment doctrine requires that services be rendered pursuant to a contract, plaintiff's claim necessarily fails. This argument is unavailing because "[t]he fact that the plaintiff could not recover under the contract does not bar [his] recovery under the theory of unjust enrichment; indeed, lack of a remedy under the contract is a precondition for recovery." Id. at 284. The doctrine of unjust enrichment is designed to vindicate a contract implied in law, not an express contract. Vertex, Inc. v. City of Waterbury, 278 Conn.

557, 574 (2006) ("an implied in law contract is another name for a claim for unjust enrichment"). While a "judge sitting at equity may not render a verdict which is inconsistent with that of a jury sitting at law on a claim involving the same essential elements," Song v. Ives Labs., Inc., 957 F.2d 1041, 1048 (2d Cir. 1992), the jury verdict in this case extends only to the existence and enforceability of an express contract between the parties, not a contract implied in law. Thus, the jury verdict does not preclude plaintiff's claim.

B. Express Agreement

Defendants argue that plaintiff cannot recover for unjust enrichment because they have proven that the parties entered into an express agreement or series of agreements. See Meaney v. Conn. Hosp. Assoc., 250 Conn. 500, 517 (1999) (proof of an "express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter"). According to the defendants, the initial agreement provided that plaintiff would receive a commission of one-third of the profits derived from the recovery of what they term the "EMC deficit" or the "EMC brokerage." The EMC deficit refers to EMC's failure to deliver computer hardware, worth approximately $5 million, pursuant to a resale contract between ECEI and EMC. The parties modified their agreement in the summer of 1997, the defendants contend, to provide plaintiff a $250,000 annual base salary in addition to his

commissions.  In December 2000 or January 2001, the EMC deficit was fully recovered and, according to the defendants, the parties agreed that plaintiff would subsequently receive an annual salary of $400,000, which was later reduced to $200,000.

I am not persuaded that the parties entered into this alleged agreement (or series of agreements).  The defendants' testimony is unconvincing because it is plainly inconsistent with their testimony in the Madison Remarketing case that plaintiff was a one-third owner of ECEI, with ownership defined as the right to participate in ECEI's profits.  (Pl. Ex. 1 at 64; Pl. Ex. 2 at 11-14.)[1]  Defendants claim to have memorialized their initial agreement with plaintiff in the written minutes of an ECEI board of directors meeting held in October 1997.  (Joint Ex. 10.)  There is no credible evidence that these minutes, which were prepared by the defendants themselves, were seen by anyone else before this case

---

[1] Defendants' explanations for the apparent inconsistencies are implausible.  At the trial, Williams testified that his deposition testimony referred to plaintiff's incentive compensation for recovery of the EMC deficit (Tr. 261:22 - 262:26) and his ownership of stock in ECEL (Tr. 262:28 - 263:26).  However, nothing in the deposition transcript suggests that the questioner ever referred–or understood Williams's answers to refer–to any entity other than ECEI.  Lynch explained that when he stated during the Madison Remarketing deposition that plaintiff's ownership of ECEI consisted of "having the right to participate in 1/3 of the profits," (Pl. Ex. 1 at 64:14-19) he was referring to the profits derived solely from the recovery of the EMC deficit (Tr. 362:30-42).  As with Williams's deposition, nothing in the deposition transcript suggests that the questioner ever referred–or understood Lynch's answers to refer–to such a limited concept of "ownership."

7

was brought. The minutes are also at least somewhat inconsistent with more credible evidence in the record.[2] Since the defendants have failed to prove that the agreement they rely on was actually made by the parties, the plaintiff's claim is not barred.

C. Statute of Limitations

Defendants' reliance on the statute of limitations is also unavailing. The statute of limitations is not controlling because it applies to legal claims, not equitable ones. Dunham v. Dunham, 204 Conn. 303, 326 (1987) (overruled on other grounds by Santopietro v. City of New Haven, 239 Conn. 207, 213 n.8 (1996)).

D. Laches

The doctrine of laches applies "only if there has been an unreasonable, inexcusable and prejudicial delay in bringing suit." Id. at 327. Laches is an affirmative defense and defendants bear the corresponding burden of proof. Florian v. Lenge, 91 Conn. App. 268, 281-82 (2005). To prevail on this defense, a defendant must show that: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." Ikelionwu v. United

---

[2] The minutes report that defendants elected Williams to serve as President and Lynch to serve as Vice President for the next fiscal year. (Id.) However, in ECEI's 1998 filing with the Connecticut Secretary of State, Lynch is listed as the President. (Joint Ex. 13.) The minutes also report that defendants voted to pay themselves $1,500,000 each for the coming year. (Joint Ex. 10.) However, ECEI's federal tax return for fiscal year 1998 reports that Lynch received $1,320,508 and Williams received $1,285,092. (Joint Ex. 6B.)

8

States, 150 F.3d 233, 237 (2d Cir. 1998). "A party's delay in bringing a claim results in prejudice to the opposing party if 'it would be inequitable, in light of a change in [a party's] position, to allow [the] claim to proceed or because the delay makes it difficult to garner evidence to vindicate his or her rights.'" Stuart & Sons, L.P. v. Curtis Pub. Co., Inc., 456 F. Supp. 2d 336, 347 (D. Conn. 2006) (quoting Robins Island Pres. Fund v. Southold Dev. Corp., 959 F.2d 409, 423 (2d Cir. 1992)).

Based on the evidence, I find that the defendants have not sustained their burden of proof regarding laches. Plaintiff credibly testified that, because he trusted the defendants, he never inspected ECEI's books and records and thus did not have actual knowledge of his cause of action until he resigned from ECEI in August 2003. Moreover, defendants have not shown that plaintiff's alleged delay in bringing suit caused them to change their position with respect to the matter in question or resulted in the loss of material evidence.[3]

E. Benefit

Defendants rely on Hurst v. Dezer/Reyes Corp., 82 F.3d 232, 237-38 (8th Cir. 1996), for the proposition that because plaintiff

---

[3] On the issue of prejudice, defendants contend that had plaintiff brought suit earlier, they "would have changed their positions with respect to the Plaintiff's renumeration [sic] and / or status with ECEI," or would not have "spent great time and effort in their relationship with" plaintiff (Sur-reply Mem. at 10-11). As pointed out in the text, however, prejudice does not result simply from continuation of the status quo.

9

provided services to ECEI and not the defendants, defendants can not be liable for unjust enrichment. The issue in Hurst was whether the owner of a Subchapter S corporation could be liable for restitution when the owner was not a party to the underlying, unenforceable agreement. See id. While plaintiff formally provided services to ECEI, his agreement was with the individual defendants, not ECEI. ECEI is a closely-held corporation owned and managed by defendants. As the sole shareholders of ECEI, only the defendants stood to gain from the profits derived from plaintiff's services. See Russell v. Russell, 91 Conn. App. 619, 638-40 (2005) (directors of closely held corporation not liable for unjust enrichment because they did not own company stock and there was no other evidence proving they personally benefitted from wrongful use of insurance proceeds). Thus, I find that defendants did benefit from plaintiff's services.

F. Failure to Pay For Benefit Retained

The measure of damages in an unjust enrichment case is the benefit to the defendant, not the loss to the plaintiff. Hartford Whalers Hockey Club, 231 Conn. at 285. In employment cases, the measure of damages typically used is the reasonable value of the services provided. Meaney, 250 Conn. at 520. Evidence is sufficient to support an award of damages if it enables the trier of fact to make a fair and reasonable estimate. Hartford Whalers Hockey Club, 231 Conn. at 285.

Based on the evidence, one-third of ECEI's profits is not a fair and reasonable estimate of the reasonable value of plaintiff's services. Plaintiff worked anywhere from "a couple of hours per week to 30 to 40 hours per week as the needs of [the] business required." (Tr. 741.) During the seven years he was associated with ECEI, he visited ECEI's offices approximately twenty times and prepared approximately eleven documents. (Tr. 161, 174.) While plaintiff's reputation and extensive contacts at EMC were instrumental in recovering the EMC deficit, Lynch made significant contributions to that effort as well. (Tr. 78.) In addition to assisting in the recovery of the EMC deficit, plaintiff recruited three sales people. (Tr. 175.) There is some evidence that plaintiff assisted in generating sales for non-EMC accounts and moving ECEI into the new equipment business. (Tr. 75-80.) However, the only evidence of the value of plaintiff's non-EMC sales is the check for $50,000 that was remitted to the plaintiff before he resigned.

Plaintiff testified that the check constituted compensation for a deal with AIG, and that payment on the check was stopped in retaliation for plaintiff's terminating his association with ECEI. (Tr. 93-94.) Lynch testified that the check constituted advance compensation for plaintiff's assistance in recovering money owed to ECEI for the Go America lease and that defendants stopped payment on the check because plaintiff's contemporaneous termination meant

11

the compensation was not earned. (Tr. 438-442.) Considering the parties' conflicting testimony in light of the entire record, I regard the plaintiff's testimony on this point as more credible than the testimony opposed to it. Accordingly, I find that the check was compensation for a deal with AIG and that payment on the check was stopped in retaliation for plaintiff's departure from ECEI.

There is no dispute that plaintiff received approximately $3.5 million over the course of his seven-year association with ECEI. While plaintiff's compensation varied from time to time, each change in compensation occurred after the parties conferred on the financial health of ECEI and how much plaintiff would be paid. These discussions show that the parties subjectively valued plaintiff's services at the amounts agreed upon. Whether plaintiff's compensation was equal to defendants' or represented one-third of ECEI's profits is not the issue. The issue is whether plaintiff's compensation reflects the reasonable value of his services. "With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable," Cecio Bros., Inc. v. Greenwich, 156 Conn. 561, 564-65 (1968), and after examining "the circumstances and the conduct of the parties," id., I conclude that the reasonable value of plaintiff's services during his tenure with ECEI is $3,566,255. As plaintiff received $3,516,255, I find that

defendants have unjustly failed to pay him $50,000.

III. Conclusion

For the foregoing reasons, judgment will enter in favor of plaintiff on count six of the complaint in the amount of $50,000.

It is so ordered this 8th day of August 2007.

                              /s/
                          Robert N. Chatigny
                     United States District Judge